UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY : : : : vs. : : : PROVIDENCE COMMUNITY ACTION : PROGRAM, INC., THOMAS S. : HEMMENDINGER, FRANK : CORBISHLEY, and WILLIAM : BENTLEY : | C. A. NO.: 1:15-cv-00388-S |

**DEFENDANT THOMAS S. HEMMENDINGER'S MEMORANDUM
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND
OBJECTION TO PHILADELPHIA'S MOTION FOR SUMMARY JUDGMENT**

Defendant Thomas S. Hemmendinger, named as a defendant in this case in his capacity as Receiver of Providence Community Action Program, Inc. ("the Receiver"), submits this memorandum in support of both his cross-motion for summary judgment and his objection to plaintiff's motion for summary judgment. Plaintiff ("Philadelphia") seeks a declaration that it is not obligated to defend or indemnify Frank Corbishley and William Bentley, formerly the executive director and assistant director, respectively, of Providence Community Action Program, Inc. ("ProCAP") against the claims brought against them by the Receiver in Providence County Superior Court.  Philadelphia claims that exclusion J in ProCAP's directors and officers liability insurance policy ("D&O policy"), which excludes coverage for claims "brought or maintained by, at the behest, or on behalf of the Organization," bars coverage for the Receiver's state court claims.

The declaration Philadelphia seeks should be denied, and judgment should be entered in favor of all defendants, because the exclusion does not apply here to bar coverage. The claims

have not been "brought or maintained by . . . [ProCAP]; rather, they have been brought by the Receiver, a judicially appointed officer of the court, who is separate and distinct from ProCAP. And the Receiver has brought those claims through his own volition and initiative, and in his own right, not "at the behest, or on behalf of" ProCAP or anyone affiliated with ProCAP. Therefore, exclusion J of the policy does not apply, and Philadelphia is obligated to provide coverage to Corbishley and Bentley for the Receiver's state-court claims.

I.      Facts

The applicable facts are undisputed and straightforward. The Receiver was appointed temporary receiver of ProCAP on December 14, 2011. He was appointed permanent receiver on January 4, 2012. The Order Appointing Permanent Receiver transferred title to all the assets and property of ProCAP, including ProCAP's "choses in action," to the Receiver. (ECF No. 18-5 at ¶ 3.) The order authorizes the Receiver to prosecute suits involving ProCAP either in ProCAP's name "or in the Receiver's name and capacity as Receiver . . ." (ECF No. 18-5 at ¶ 4.)

After his appointment, the Receiver conducted an investigation, without the assistance of anyone affiliated with ProCAP, into the business and financial affairs of ProCAP. This investigation led the Receiver to conclude that grounds existed for a claim of breach of fiduciary duty and negligence against Corbishley and Bentley. The Receiver then commenced, in his own name and in his capacity as receiver of ProCAP, a director and officer liability claim against Corbishley and Bentley in Providence County Superior Court. (Affidavit of Thomas S. Hemmendinger, at ¶¶ 5-7.) In his Complaint, the Receiver alleged that "as Receiver of ProCAP, [he] is empowered and authorized, as the agent of the court, to assert claims for damages against any parties who may be liable to ProCAP for damages, including [Corbishley and Bentley]." (ECF No. 18-9 at ¶ 9.)

In December of 2011, concerned that ProCAP's ownership of real property and operation of vehicles could result in vicarious liability for personal injuries or property damage, the Receiver requested coverage as an additional insured on ProCAP's general liability insurance. (Affidavit of Thomas S. Hemmendinger at ¶ 3.)[1] On December 22, 2011, Philadelphia issued an amendment to the D&O policy that added the Receiver to the D&O policy as an "independent contractor." Philadelphia made this change to the D&O policy despite the fact that the Receiver never desired or requested coverage under that policy. The Receiver never received notice from Philadelphia that he had been added as an independent-contractor under the ProCAP D&O policy, and did not become aware that Philadelphia had made that change to the policy until documents to that effect surfaced in this litigation. (Affidavit of Thomas S. Hemmendinger at ¶4.)

Those documents (email correspondence between representatives of Philadelphia and Andrew Troy of the Troy Pires & Allen insurance agency, ECF No. 18-3), show that it was Andrew Troy who, on his own initiative, requested that the Receiver be added to the ProCAP D&O policy. On December 22, 2011, Mr. Troy sent an email to James Ferriero, an underwriter at Philadelphia Insurance Companies, in which he stated,

> This client [ProCAP] has had a receiver appointed by the State of RI to oversee the operations. The receiver is Thomas S Hemmendinger. I am writing to request that he be added to the directors' and officers' liability policy as he is currently making all decisions regarding Providence Community Action.

Lisa Cassidy of Philadelphia responded,

> If Tom is considered a director of [sic] officer of organization then he would be covered under our policy form. If he is not then we could possible [sic] name him as an independent contractor.

---

[1] In response to a question about whether a ProCAP employee could be granted a hardship exception from a receivership rule that forbid anyone from taking ProCAP vehicles home, the Receiver replied, "So long as you have confirmation that the motor vehicle liability insurance is in place (and with me named as an additional insured), this hardship exception works for me." (Affidavit of Thomas S. Hemmendinger, Exhibit C.)

3

Mr. Troy responded to Lisa,

> I would be more comfortable if we list him as an independent contractor to be sure his name shows up and there is no question of his title/role with Providence Community Action.

Thus, the entire process of adding the Receiver to the ProCAP D&O policy as an independent contractor was instigated by Philadelphia and Andrew Troy, without the Receiver's request, knowledge, or agreement.

II.   Applicable Law

　　A.   The Status and Authority of a Receiver under Rhode Island Law

A receiver's status as independent from the corporation in receivership is well-defined under Rhode Island law. "A receiver is an officer of the court that appointed him . . .." *Rhode Island Hospital Tr. Co. v. Rhode Island Covering Co., Inc.*, 95 R.I. 30, 35, 182 A.2d 438, 441 (1962), citing *Manchester v. Manchester,* 94 R.I. 400, 404, 181 A. 2d 235, 238 (1962) ("[A] receiver appointed by a court of equity is an officer thereof . . .."). The Rhode Island Supreme Court has also characterized a receiver as an "instrumentality" of the court that creates him or her, *Hill v. M.S. Alper & Son, Inc.,* 106 R.I. 38, 44, 256 A.2d 10, 14 (1969), or the "hand" of the appointing court, *Fairchild v. Uniform Seamless Wire Co.,* 41 R.I. 139, 140, 102 A. 962, 963 (1918).

Moreover, "property in [the receiver's] possession which constitutes part of the estate that is the subject of the receivership is in custodia legis until it is disposed of by the receiver in compliance with an order of that court." *Manchester v. Manchester,* 94 R.I. at 404, 181 A. 2d at 238; *Rhode Island Hospital Tr. Co. v. Rhode Island Covering Co., Inc., supra.* ("[P]roperty entrusted to such a receiver is in the custody of [the] court to be disposed of only according to its order and in accordance with the priorities of the parties concerned.").

Thus, under Rhode Island law, when a receiver takes action within the scope of his or her appointment as to any asset of the receivership estate, he is acting as an agent and on behalf of the court that appointed him or her, and with respect to property that remains under the custody and control of the court. This is evident from the Order Appointing Permanent Receiver that was entered on January 4, 2012 (ECF No. 18-9.), which vests the receiver with title to all of ProCAP's assets and property, including its choses in action. It also authorizes the receiver to prosecute lawsuits "in the Receiver's name and capacity as Receiver." (ECF No. 18-9 at ¶ 4.) Therefore, under Rhode Island law and the order appointing him, when the Receiver sued Corbishley and Bentley, he did so as an officer of the Providence County Superior Court, with authority over a property right (the chose in action against Corbishley and Bentley) that remains under the control and supervision of the Superior Court.

The appointment order also demonstrates the continuing supervision and control by the Superior Court by its requirements that the Court must approve the retention of, and payments to, various business professionals (ECF No. 18-9 at ¶ 3.) and the sale of any real or personal property of the receivership estate (ECF No. 18-9 at ¶ 9.), and the order's reservation to the Receiver and the parties to the receivership proceeding of the right "to apply to this court for any other or further instructions to the Receiver . . ." (ECF No. 18-9, ¶ 14.). This judicial control and supervision over the Receiver and the receivership estate is further evidenced by the requirements that the Receiver file periodic reports regarding the condition of the receivership under R.I. Super. R. Civ. P. 66(e) and R.I. Superior Court Administrative Order No. 98-7.

B.     Interpretation and Construction of Insurance Policy Provisions

Since the language of exclusion J is simple and direct, the relevant principles of interpretation and construction of insurance contract terms are uncomplicated. "When the terms

of an insurance policy are unambiguous, this Court will give the words, when read in conjunction with the entire policy, their plain and ordinary meaning." *Metro Properties, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 934 A.2d 204, 208 (R.I. 2007) (citing *Zarrella v. Minnesota Mutual Life Ins. Co.,* 824 A.2d 1249, 1259 (R.I. 2003)). In giving insurance policy terms their plain meaning, courts should "refrain from 'engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present.'" *Peerless Ins. Co. v. Luppe,* 118 A.3d 500, 507 (R.I. 2015) (citing *Mallane v. Holyoke Mutual Ins. Co. in Salem,* 658 A.2d 18, 20 (R.I. 1995)). Dictionaries may be used to assist a court in determining the plain ordinary meaning of insurance contract words or phrases. *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.,* 852 A.2d 535 (R.I. 2004).

On the other hand, ambiguity may exist where a contract provision is "reasonably susceptible of different constructions." *Westinghouse Broadcasting Co. v. Dial Media, Inc.,* 122 R.I. 571, 579, 410 A.2d 986, 991 (1980). In situations where insurance policy terms are found to be ambiguous, "the policy will be strictly construed in favor of the insured and against the insurer." *Mallane v. Holyoke Mutual Ins. Co.,* 658 A.2d 18, 20 (R.I. 1995).

The insurer bears the burden of proving that a policy exclusion bars coverage. *Children's Friend and Service v. St. Paul Fire & Marine Ins. Co.,* 893 A.2d 222, 230 (R.I. 2006).

III. <u>Argument</u>

Exclusion J bars coverage here only if the Receiver's claim against Corbishley and Bentley has been "brought or maintained by, at the behest, or on behalf of the Organization." Therefore, for coverage to be excluded, one of three tests must be satisfied: the claim must have been (1) brought or maintained *by* ProCAP; (2) brought or maintained *at the behest* of ProCAP; or (3) brought or maintained *on behalf* of ProCAP. None of these conditions are satisfied here.

This coverage issue must be viewed in the context of the purpose of exclusions like exclusion J.

> The primary focus of the exclusion is to prevent collusive suits in which an insured company might seek to force its insurer to pay for the poor business decisions of its officers or managers. The exclusion arose from a wave of litigation in the mid-1980's when corporations attempted to use their Director and Officer policies to recoup operational losses.

*Township of Center, Butler County, Pa. v. First Mercury Syndicate, Inc.,* 117 F.3d 115, 119 (11th Cir. 1997). Philadelphia acknowledges the rationale for the exclusion. Here, there is no suggestion that the Receiver's suit against Corbishley and Bentley is collusive. Plainly, this is not the type of claim that exclusion J was intended to exclude.

Philadelphia itself makes this crystal-clear by its own limitation of the exclusion (sometimes referred to as a carveback) found in the "Amendment of Exclusions" section of the endorsement to the D&O policy referred to by Philadelphia as a "Pro-Pak Elite Enhancement." (ECF No. 18-1 at p. 50-55.) Item E of the Amendment of Exclusions provides that "Item J. will not apply to any claim brought as a derivative action, or similar action, on behalf of the Organization, provided the claim is brought without the assistance of any current or former Individual Insured." (ECF No. 18-1 at p. 52) Therefore, a claim will be covered even if it is brought "on behalf" of ProCAP, as long as it is in the nature of a derivative claim and no individual insured helps prosecute the claim. In this carveback, Philadelphia clarifies and limits the purpose of exclusion J to exclude coverage only in situations involving collusive lawsuits.

    A.    <u>The Receiver's state court claim has not been brought by ProCAP.</u>

The word "Organization" in exclusion J appears in bold type, which indicates that the term is defined in the policy. The definition appears in Part 6 ("Common Policy Definitions"). In relevant part, it states, "Organization means: 1. the Parent Organization, 2. any Subsidiary . . ."

(ECF No. 18-1 at p.36). "Parent Organization" itself is defined simply to mean "the first entity named in item 1 of the Declarations Page" (ECF No. 18-1 at p. 13); "item 1" states that the parent organization is Providence Community Action Program.[2] Significantly, neither exclusion J nor the definition of "Organization" mentions a receiver or any other type of successor in interest. If Philadelphia intended to include claims by receivers when it barred claims by "the Organization," it would have been a simple matter to either define "Organization" to include receivers or receiverships, or to include such entities in the exclusion itself, as other insurance companies have done. For example, in *Bancsure, Inc. v. Federal Deposit Ins. Corporation,* 796 F.3d 1226, 1231 (10th Cir. 2015), the policy excluded coverage for "a Claim by, or on behalf of, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee or receiver of the Company. . .." Since receiverships are mentioned in the policy (exclusion G bars coverage for any losses arising out of the receivership of any bank or other investment or insurance company) the concept of a receivership was certainly known to Philadelphia. The only reasonable conclusion that can be drawn from Philadelphia's failure to use a broader exclusion or a broader definition of Organization is that Philadelphia meant "the Organization" to mean ProCAP and only ProCAP. Its failure to either include receivers in exclusion J or define "Organization" to include receivers is fatal to any argument that Receiver's claim is a claim by "the Organization."

The Receiver's state court complaint (ECF No. 18-9) demonstrates that the claim has not been brought by ProCAP. The Receiver states in the caption and the first paragraph of the Complaint that he is suing in his capacity as Receiver of ProCAP. Moreover, in paragraph 9, the Receiver states that he is asserting his claim under the power and authority he possesses as an

---

[2] "Subsidiary" does not have as simple a definition, but the definition is irrelevant because Philadelphia does not claim that the Receiver's state court claim has been brought by a subsidiary of ProCAP.

agent of the Superior Court. He does not base his claim on any relationship with ProCAP. Therefore, the Receiver has made it clear that his authority to bring this action is based not on any identity or relation with ProCAP, but rather on his judicially-authorized status as an appointed agent of the Court.

Since the claim has been brought by and in the name of the Receiver, and not by ProCAP, and since the policy does not define "Organization" to include a court-appointed receiver, the first test of the exclusion, that the claim must have been "brought or maintained by . . . [ProCAP]," is not satisfied.

B. <u>The Receiver's claim has not been brought or maintained at the behest of ProCAP.</u>

Since the phrase "at the behest" is not defined in the policy, and is not ambiguous, it should be given its commonly understood meaning. "Behest" is defined as "A person's orders or command" (http://www.oxforddictionaries.com/us/definition/american_english/behest) or "an authoritative order: command" or "an urgent prompting" (http://www.merriam-webster.com/dictionary/behest).

If the Receiver has brought the claim at the "behest" of anyone, it was at the behest of the Superior Court, which created the receivership, empowered the Receiver as an agent of the court, and vested the Receiver with the title to "all assets, property, *choses in action*, and any rights of [ProCAP]." (ECF No. 18-5, ¶ 3 (emphasis added)). Since the undisputed facts establish that the Receiver has brought the claim pursuant to his court-appointed role and duties, and based on his own investigation and analysis of ProCAP's affairs (Affidavit of Thomas S. Hemmendinger, ¶¶ 5-7), the exclusion for claims brought "at the behest" of ProCAP does not apply.

C. <u>The Receiver's claim has not been brought or maintained "on behalf of" ProCAP.</u>

In *Progressive Casualty Ins. Co. v. Federal Deposit Ins. Corp,* 80 F.Supp.3d 923 (N.D.

Iowa 2015) the court rejected an argument that the FDIC, in a director and officer liability claim brought in its capacity as receiver of a failed bank, was acting "on behalf of" the failed bank so as to trigger a coverage exclusion similar to Philadelphia's exclusion J. Noting that "behalf" has been defined by the Oxford English Dictionary as "On the part of (another), in the name of, as the agent or representative of, on account of, for, instead of. (With the notion of an official agency.)," 80 F.Supp. 3d at 948, the court concluded that it found "no basis to graft onto this interpretation of "on behalf of . . . the Company" an action by a receiver or other successor." *Id*.

The same result should obtain here. The receiver here is not acting "on behalf of" ProCAP when he sued ProCAP's former directors and officers any more than the FDIC as receiver was acting "on behalf of" the failed bank when it sued the bank's directors and officers. To the contrary, as a matter of Rhode Island law, he is acting as agent of, and on behalf of, the Providence County Superior Court. The claim itself has been transferred by and from the Court to the Receiver so, to the extent that ProCAP even remains in existence,[3] it no longer possesses, and could not sue to enforce, the claim on which the receiver is suing. And, like all receivership assets, the chose in action remains in *custodia legis* until the Receiver disposes of it. *Manchester v. Manchester*, *supra.* Since ProCAP has been stripped of any rights it had in the claim, and the claim is *in custodia legis,* the Receiver cannot be asserting it "on behalf of" ProCAP.

Philadelphia raises three arguments (Memorandum, pp. 10-13) in an attempt to demonstrate some identity or equivalency between the Receiver and ProCAP. It argues (1) that the Receiver's addition by Philadelphia to the policy as an "independent contractor" insured means that the Receiver is acting on behalf of ProCAP; (2) that because a receiver has been

---

[3] The Rhode Island Secretary of State revoked the Certificate of Incorporation/Authority of ProCAP on February 18, 2015. Affidavit of Thomas S. Hemmendinger, ¶8.

described as standing in the shoes of the failed corporation in certain contexts, his actions are "on behalf of" that corporation; and (3) that the Receiver has admitted that he is acting "on behalf of" ProCAP. None of these arguments holds water.

The circumstances surrounding Philadelphia's addition of the Receiver to the policy as an "independent contractor" show that this action was erroneous and should have no bearing on the application of exclusion J. First, the Receiver did not need,[4] request, or agree to his addition to the ProCAP D&O policy as an "independent contractor". Affidavit of Thomas S. Hemmendinger at ¶¶ 3, 4. Therefore, there was never the mutual assent or "meeting of the minds" that is necessary for the formation of a binding agreement. *See Opella v. Opella,* 896 A.2d 714, 720 (R.I. 2006).

Second, the email correspondence between Andrew Troy and the Philadelphia underwriter regarding the Receiver shows that the underwriter didn't understand either who the Receiver was or how to add him to the D&O policy. (ECF No. 18-3 at p. 3.) The error by the underwriter in adding the Receiver to the policy as a so-called "independent contractor" is apparent from the policy's definition of that term: "Independent Contractor means an individual who is contracted to perform services for the Organization . . ." (ECF No. 18-1 at p. 3.) Of course, the Receiver was never "contracted to perform services for [ProCAP]." Rather, he was appointed by the Superior Court to act as its agent to marshal the assets of ProCAP and satisfy the claims of its creditors. Since the Receiver was never an independent contractor for ProCAP and never "perform[ed] services for the Organization," his erroneous addition to the policy as an independent contractor cannot transform his court-officer status

---

[4] That the Receiver's insurance-coverage concern did not extend beyond protection from personal vicarious tort liability for personal injury claims was well-founded, since receivers, as court officers, "share the immunity awarded to judges" for their actions in carrying out the orders of the courts that appoint them. *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 2 (1st Cir. 1976); *see, Perry Center, Inc. v. Heitkamp,* 576 N.W. 2d 505, 511 (N.D. 1998) ("Because receivers are court officers, it has been uniformly held that a court-appointed receiver is entitled to absolute derivative judicial immunity.").

into action "on behalf of" ProCAP.

Philadelphia is in the business of issuing D&O policies, and because it mentions receivers in another part of the policy, Philadelphia should have known better than to suggest that the Receiver should be—or even could be—an independent contractor. Philadelphia should not be allowed to use its own underwriting error to avoid coverage in this sleight-of-hand way.

Moreover, but for Philadelphia's unwarranted addition of the Receiver to the policy as an independent contractor, the Amendment of Exclusions Item E would make it clear that exclusion J does not apply. The Receiver's claim is in the nature of a derivative action, and if Philadelphia had not added the Receiver as an independent contractor, the claim would be "brought without the assistance of any current or former Individual Insured." Since the addition of the Receiver should be given no legal effect, the carveback in Amendment of Exclusions Item E makes it clear that exclusion J does not apply to the Receiver's claim.

Philadelphia's "stand in the shoes" argument must also fail. None of the cases cited by Philadelphia stands for the proposition that because a receiver may metaphorically stand in the shoes of an entity, he assumes a legal identity with the corporation in receivership for all purposes, including the meaning and application of insurance clauses like exclusion J. The "stand in the shoes" metaphor means only that the Receiver's claim against Corbishley and Bentley is only as good *on the merits* as ProCAP's claim against Corbishley and Bentley would have been if there had never been a receivership. All the Rhode Island cases cited by Philadelphia in support of its "stand in the shoes" argument stand only for the basic proposition that a receiver "succeeds only to the debtor's rights, and takes the property subject to the claims, liens and equities which would affect the debtor if he himself were asserting his interest in the property." *Vitterito v. Sportsman's Lodge & Restaurant, Inc.,* 102 R.I. 72, 79, 228 A.2d 119,

124-125 (1967), *citing Ryder v. Ryder,* 19 R.I. 188, 32 A. 919 (1895).

*Paine v. Schenectady Ins. Co.,* 11 R.I. 411 414 (1877), relied upon by Philadelphia, is not even on point. It stands only for the proposition that a judgment in favor of the receiver has the same legal effect as a judgment by the corporation in receivership for *res judicata* purposes. Neither *Paine* nor any of the other cases cited by Philadelphia that use the "stand in the shoes" metaphor support the proposition that a receiver who sues former directors of a corporation in receivership is acting on behalf of the corporation for purposes of an insurance provision like exclusion J.   See *Progressive Casualty Ins. Co. v. Federal Deposit Ins. Corp,* 80 F.Supp.3d at 949 (That FDIC may step into the shoes of a failed financial institution is not equivalent to it acting "on behalf of" the institution when it sues institution's directors and officers.).

While the Receiver here may not have any rights or claims against Corbishley and Bentley greater than those that ProCAP would have had outside the receivership, the decisive point is that *he* now has those rights, not ProCAP. After the Superior Court's appointment order transferred all of ProCAP's assets, property, and choses in action to the Receiver, he and he alone could assert the claims that formerly belonged to ProCAP. Since all of ProCAP's claims are now *in custodia legis* and the Superior Court has empowered the receiver to assert them, it was impossible for the Receiver, when he asserted one of those claims, to be acting on behalf of ProCAP. Whether the receiver metaphorically stands in ProCAP's shoes for purposes of determining the breadth of those claims does not change this reality.

Finally, Philadelphia's argument that the Receiver has admitted that he is suing on behalf of ProCAP ignores statements by the Receiver that say just the opposite. For example, when counsel for the Receiver wrote to Philadelphia on February 22, 2012, he stated that "the Receiver is aware of potential claims *he may have as Receiver*" against ProCAP's former executive

director. (ECF No. 18-6 (emphasis added)). When he filed his Complaint against Corbishley and Bentley in Superior Court, that pleading, which is the most important and determinative characterization of the nature of the Receiver's claim, indicates that the Receiver was bringing the claim in his capacity as Receiver and because "[a]s Receiver of ProCAP, plaintiff is empowered and authorized, as the agent of the Court, to assert claims for damages against any parties who may be liable to ProCAP for damages, including [Corbishley and Bentley]." While the claims may not now be any more or less than they were when they belonged to ProCAP, those claims now belong to the Receiver, and he has made it clear that he is asserting *his* claim against Corbishley and Bentley in his own right as Receiver, not on behalf of ProCAP.

IV. Conclusion

Under settled principles of Rhode Island receivership law and the terms of the orders appointing him, the Receiver's claims against Corbishley and Bentley have not been "brought or maintained by, at the behest, or on behalf of [ProCAP]." Therefore, this court should decide that exclusion J does not apply to the receiver's claim, and enter judgment requiring Philadelphia to defend and indemnify Corbishley and Bentley in the receiver's state court action.

THOMAS S. HEMMENDINGER, in his
capacity as Receiver of Providence
Community Action Program, Inc.
By his attorney,

/s/ John S. Foley
_____
John S. Foley, Esq.    Bar #2060
FoleyCerilli, P.C.
56 Pine Street, Suite 200
Providence, RI 02903
Telephone:  (401) 272-7800
Facsimile:  (401) 274-2780
john@foleycerilli.com

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 10, 2016, 2016 I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Rhode Island by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                               /s/ John S. Foley
                                               _____