UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
PHILADELPHIA INDEMNITY          )
INSURANCE COMPANY,              )
                                )
          Plaintiff,            )
                                )
     v.                         )   C.A. No. 15-388 S
                                )
PROVIDENCE COMMUNITY ACTION     )
PROGRAM, INC; THOMAS HEMMENDINGER; )
FRANK CORBISHLEY; and           )
WILLIAM BENTLEY,                )
                                )
          Defendants.           )
_____)
```

### OPINION AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before this Court is a declaratory judgment action brought by Philadelphia Indemnity Insurance Company ("Plaintiff") against Providence Community Action Program, Inc., Thomas Hemmendinger, Frank Corbishley, and William Bentley (collectively, "Defendants"). Plaintiff has filed a Motion for Summary Judgment, and Defendants have filed a Cross-Motion for Summary Judgment. The parties have lodged their respective objections. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Cross-Motion for Summary Judgment is GRANTED.

I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Where, as here, there are cross-motions for summary judgment, this "simply require[s] [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry., 100 F.3d 228, 230 (1st Cir. 1996)). Questions of law may be appropriately resolved on a motion for summary judgment. Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004). This includes questions regarding the construction of an unambiguous contract. See Lloyd's of London v. Pagan-Sanchez, 539 F.3d 19, 22 (1st Cir. 2008).

II. Background[1]

Providence Community Action Program, Inc. ("ProCAP") is a non-profit corporation located in Rhode Island. In April of 2011, ProCAP purchased a directors and officers liability insurance policy ("D&O Policy" or "Policy") from Philadelphia Indemnity Insurance Company ("PIIC"). Soon thereafter, ProCAP

---

[1] As this is an order on a motion for summary judgment, the Court recounts the undisputed facts from the record.

began experiencing financial difficulty and was forced into receivership. The temporary receivership order was signed by the Rhode Island Superior Court on December 14, 2011, appointing Thomas Hemmendinger ("Receiver" or "Hemmendinger") as the Receiver. (Parties' Agreed Statement of Facts Ex. B, ECF No. 18-2.) That order was later amended on January 4, 2012, and Hemmendinger was appointed as the permanent Receiver. (Id. Ex. E, ECF No. 18-5.)

The Rhode Island Superior Court's appointing order provides the Receiver various powers, including as follows:

> The Receiver is hereby authorized to collect all the debts due the Defendant, to prosecute and defend, suits in its name or in the Receiver's name and capacity as Receiver or to intervene in any action, suit, or proceeding relative to the estate or effects of the Defendant . . . and generally do any other act which might be done by the Defendant or that may in the judgment of the Receiver be necessary or desirable for the protection, maintenance and preservation of the property and assets of the Defendant.

(Id. Ex. E ¶ 4, ECF No. 18-5.)

Having been granted these powers, the Receiver brought a breach of fiduciary duty claim in Rhode Island Superior Court against two former[2] ProCAP officers, Frank Corbishley and William

---

[2] The Rhode Island Secretary of State revoked ProCAP's "Certificate of Incorporation/Authority" as of February 18, 2015. (Hemmendinger Aff. Ex. D, ECF No. 24-4.)

3

Bentley. The Receiver then sent a demand letter to PIIC for payment under the Policy. PIIC denied that claim, explaining that the Policy does not cover lawsuits brought by the Receiver "on behalf of" ProCAP. (Id. Ex. K, ECF No. 18-11.)

The D&O Policy[3] purchased by ProCAP from PIIC is entitled "Flexi Plus Five." (Compl. 36, ECF No. 1.) This sort of D&O liability policy is fairly common, and its purpose is to protect organizations against the wrongful acts of their management. To that end, Part 1 of the "Flexi Plus Five" Policy includes the following language: "The Underwriter will pay on behalf of the Organization, Loss from Claims made against the Organization during the Policy Period . . . for a D&O Wrongful Act." (Id.)

The Policy's broad coverage for all "wrongful act[s]" of directors and officers is subject to several exclusions. The relevant exclusion in this case states: "The Underwriter shall not be liable to make any payment for Loss in connection with any Claim made against the Insured . . . brought or maintained by, at the behest, or on behalf of the Organization."[4] (Id. at

---

[3] A complete copy of the Flexi Plus Five Policy is included in the Complaint. (See Compl. 36, ECF No. 1.)

[4] This sort of exclusion is typical for directors and officers liability insurance policies, and is commonly referred to as the "insured v. insured exclusion." Stratton v. Nat'l Union Fire Ins. Co., No. CIV.A.03-CV-12018-RGS, 2004 WL 1950337, at *5 (D. Mass. Sept. 3, 2004). The purpose of this exclusion

45-46.) The Policy defines "Organization" as the "Parent Organization" or "Any Subsidiary." (<u>Id.</u> at 44.) However, the Policy provides no definition for the phrase "on behalf of."

After ProCAP went into receivership, the Policy was amended to include the Receiver (Hemmendinger) as a named party with coverage under the Policy. This amendment places the Receiver under the umbrella definition of an "Individual Insured" and labels him an "Independent Contractor." (<u>Id.</u> at 11.) The amendment defines the term "Independent Contractor" as "an individual who is contracted to perform services for the Organization . . . ." (<u>Id.</u>) Of note, the amendment does not make any reference to the insured-versus-insured exclusion in the original Policy.

III. Discussion

A. Issue Framing

At the core of the parties' dispute is whether the claim brought by the Receiver against ProCAP's former officers should be considered as brought "on behalf of" ProCAP such that it is subject to the insured-versus-insured exclusion. The

---

"is to protect insurers from collusive lawsuits by corporations trying to recoup corporate losses by attributing them to the wrongdoing of directors and officers who, if insured, have nothing to lose by taking the blame." <u>Id.</u>; <u>see also</u> <u>Narath v. Exec. Risk Indem., Inc.</u>, No. CIV.A. 01-10122-RWZ, 2002 WL 924231, at *2 (D. Mass. Mar. 14, 2002) (memorandum decision).

disagreement involves two issues. The first hinges on the role of the Receiver under Rhode Island law. PIIC argues that the Receiver, in bringing a lawsuit against former ProCAP directors and officers, is taking action "on behalf of" ProCAP. In contrast, the Receiver argues that he does not act on behalf of ProCAP, but instead acts on behalf of the Rhode Island Superior Court that appointed him.

The second issue revolves around the Policy amendment which specifically defines the Receiver as an "Individual Insured" and an "Independent Contractor . . . who is contracted to perform services for the Organization . . . ." (Compl. 11, ECF No. 1.) PIIC argues that because the Policy defines the Receiver as "perform[ing] services for" ProCAP, the Receiver's lawsuit was by definition "on behalf of" ProCAP for the purposes of the Policy's insured-versus-insured exclusion (even if, under Rhode Island law, the Receiver is acting as an agent of the Rhode Island Superior Court). The Receiver argues that the amendment was erroneously added and, in any event, the amendment's language does not transform the Receiver's actions, which were taken on behalf of the Superior Court, into actions taken "on behalf of" ProCAP.

B. Issue 1 – Rhode Island Receivership Law

The parties disagree on whether the Receiver is taking action "on behalf of" ProCAP (making the insured-versus-insured exclusion applicable) or is instead acting on his own behalf as an agent of the Rhode Island Superior Court (making the insured-versus-insured exclusion inapplicable). The question of whether various successors in interest (e.g., the FDIC, bankruptcy trustees, receivers, etc.) act "on behalf of" the pre-bankruptcy or pre-receivership entity for the purposes of the insured-versus-insured exclusion has been the subject of much debate and disagreement. See, e.g., Michael D. Sousa, Making Sense of the Bramble-Filled Thicket: the "Insured vs. Insured" Exclusion in the Bankruptcy Context, 23 Emory Bankr. Dev. J. 365 (2007). This disagreement has led to conflicting decisions in the federal courts. See, e.g., W Holding Co., Inc. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 386 (1st Cir. 2014) (noting that there is "no controlling authority on whether an insured-versus-insured exclusion applies to the FDIC . . . with non-binding cases pointing in different directions"); Biltmore Associates, LLC v. Twin City Fire Ins. Co., 572 F.3d 663, 670-71 (9th Cir. 2009) (discussing the disagreement among federal courts as to whether the insured-versus-insured exclusion applies to a post-bankruptcy entity). For their part, the parties have provided

several out-of-circuit decisions in support of their arguments, all of which provide some conflicting analysis.

While the cases that discuss this issue are useful, they are not controlling. Neither the First Circuit nor the Rhode Island Supreme Court has specifically addressed whether the insured-versus-insured exclusion applies to a Rhode Island court-appointed receiver. As the resolution of this issue depends on Rhode Island law governing receiverships, it is to that area of law the Court next turns.

When the Rhode Island Superior Court orders a company into receivership, the court and its receiver (as an officer of the court) take possession of the company in custodia legis. Manchester v. Manchester, 94 A.2d 235, 238 (R.I. 1962); see also State of Maine v. Fiore, 497 A.2d 298, 301 (R.I. 1985) ("We Courts in general accept the view that a receiver appointed by a court of equity is an officer thereof and property in his possession which constitutes a part of the estate that is the subject of the receivership is in custodia legis until it is disposed of by the receiver in compliance with an order of that court.") (quoting Manchester, 181 A.2d at 238).[5] The phrase in

---

[5] The Rhode Island Superior Court's authority to appoint a receiver has been codified in the Rhode Island Business Corporation Act. See R.I. gen. Laws § 7-1.2-1323 ("[T]he superior court has full power to appoint a receiver, with any

custodia legis "is traditionally used in reference to property taken into the court's charge during pending litigation over it."  Black's Law Dictionary 783 (8th ed. 2004). "[U]nlike a mere attachment, the court's decision to place the property in custodia legis divest[s] [the debtor] of legal title and le[aves] him with only a contingent right to the property." Davis v. Cox, 356 F.3d 76, 94 (1st Cir. 2004) (reviewing the claim of a receiver under Maine law).

As the holder of legal title, the Superior Court is empowered (through its receiver) to distribute the property to various interests as it deems appropriate. Rhode Island Hosp. Trust Co. v. Rhode Island Covering Co., 182 A.2d 438, 441 (R.I. 1962) ("[P]roperty entrusted to such a receiver is in the custody of that court to be disposed of only according to its order and in accordance with the priorities of the parties concerned."). The pre-receivership entity that previously owned the property still holds a "contingent interest" in that property. Davis, 356 F.3d at 93-94. Therefore, if the receivership is terminated, the receivership estate may be returned to the company that originally owned it. In re Steenstra, 307 B.R. 732, 740 (B.A.P. 1st Cir. 2004) (holding

powers and duties that the court, from time to time, directs, and to take any other proceedings that the court deems advisable under the circumstances.").

9

that, in the bankruptcy context, "once the case is dismissed and the automatic stay is terminated, the property of the estate revests in the debtor and the doctrine of in custodia legis no longer applies").

However, the re-vesting of the receivership estate back to the company with a contingent interest is by no means guaranteed. As noted above, a receiver, as an agent of the Superior Court, may transfer the property to other interested parties. See Rhode Island Hosp. Trust Co., 182 A.2d at 441; Francis v. Buttonwood Realty Co., 765 A.2d 437, 443 (R.I. 2001). This outcome is particularly likely in this case as the Rhode Island Secretary of State revoked ProCAP's "Certificate of Incorporation/Authority" as of February 18, 2015, making it impossible for any funds obtained in the Receiver's lawsuit to re-vest in ProCAP. (Hemmendinger Aff. Ex. D, ECF No. 24-4.)

Decisions of courts within the First Circuit on the topic of the insured-versus-insured exclusion in the receivership or bankruptcy context are consistent with this interpretation of Rhode Island law.[6] For example, in Am. Cas. Co. of Reading,

---

[6] Sec. & Exch. Comm'n v. Churchville, No. C.A. No. 15-191 S, 2016 WL 3816373, at *2-3 (D.R.I. July 12, 2016) (finding "little case law relating to equitable receiverships" in Rhode Island and looking to "cases interpreting the U.S. Bankruptcy Code"); Patel v. Shivai Nehal Realty LLC, No. KB-2012-0301, 2012 WL 5380060, at *2 (R.I. Super. Ct., Oct. 26, 2012) ("[W]here state

_Pennsylvania v. Sentry Fed. Sav. Bank_, 867 F. Supp. 50, 59 (D. Mass. 1994), the District of Massachusetts held:

> [t]he crux of the dispute is this: when the [receiver] is asserting the claims of the Bank, does it merely "stand in the shoes" of the bank subject to the same limitations that would apply to the bank, _see_ _FDIC v. American Cas. Co.,_ 975 F.2d 677, 681-82 (10th Cir. 1992); _Mt. Hawley Ins. Co. v. FSLIC_, 695 F. Supp. 469, 482 (C.D. Cal. 1987); _Gary v. American Cas. Co._, 753 F. Supp. 1547, 1555 (W.D. Okla. 1990), or is it different from the bank because it represents shareholders and creditors of the bank and is not the Insured referred to in the exclusion, _see_ _Baker_, 758 F. Supp. at 1349; _American Casualty Co. v. FDIC_, 791 F. Supp. 276 (W.D. Okla. 1992); _American Cas. Co. v. FDIC_, No. CIV. 86-4018, 1990 WL 66505, at *11 (N.D. Iowa Feb. 26, 1990), _aff'd in relevant part and rev'd in part_, 944 F.2d 455 (8th Cir. 1991); _Branning v. CNA Ins. Cos._, 721 F.Supp. 1180, 1184 (W.D. Wash. 1989).
>
> "The weight of opinions concerning 'insured vs. insured' exclusions in the receivership context side with the _American Casualty_ cases and the _Branning_ decision by allowing coverage when receivers sue the former directors and officers of a failed institution." Melanie K. Palmore, _'Insured vs. Insured' Exclusions in Director and Officer Liability Insurance Policies: Is Coverage Available When Chapter 11 Trustees and Debtors-in-Possession Sue Former Directors and Officers?_, 9 Bankr. Dev. J. 101, 118 (1992).

---

receivership law provides minimal guidance, this Court instead 'looks to the Bankruptcy Act and to decisions by the federal courts for guidance.'") (quoting _Reynolds v. E & C Assoc._, 693 A.2d 278, 281 (R.I. 1997)).

_Id._ at 59; _see also_ _Narath v. Exec. Risk Indem., Inc.,_ No.
CIV.A. 01-10122-RWZ, 2002 WL 924231, at *2 (D. Mass. Mar. 14,
2002) ("[C]ourts have generally found 'insured v. insured'
exclusions inapplicable where, as here, one 'insured' is the
trustee or receiver of an insolvent institution bringing claims
against the management of that institution.") (memorandum
decision); _In re Molten Metal Tech., Inc.,_ 271 B.R. 711, 726
(Bankr. D. Mass. 2002) ("The claims now belong to the estate,
not to the Company, and the Chapter 11 Trustee brings them on
behalf of the estate, not on behalf of the Company.").

Under these circumstances, the Court finds that a Rhode
Island receiver is not accurately described as working "on
behalf of" the pre-receivership entity. Instead, a Rhode Island
receiver is better understood as an agent of the Superior Court
that appointed the receiver and as working for the potential
benefit of various parties. In this case, the Receiver's claims
were therefore not brought "on behalf of" ProCAP and are not
subject to the insured-versus-insured exclusion.

C. Issue 2 - Receiver as Defined in the Policy

According to PIIC, regardless of how Rhode Island law
defines the role of a court-appointed receiver, the Receiver in
this case should still be considered as acting "on behalf of"
ProCAP under the terms of the Policy. PIIC's argument is based

12

on the amendment to the Policy that was made after the Superior Court appointed Hemmendinger as the Receiver. That amendment specifically defines Hemmendinger as an "Independent Contractor . . . who is contracted to perform services for the Organization . . . ." (Compl. 11, ECF No. 1.) Under PIIC's reading of the Policy, because the Receiver is defined as "perform[ing] services for the Organization" in the amendment, the Receiver, by definition, is acting "on behalf of the Organization" for the purposes of the insured-versus-insured exclusion in the original Policy (Rhode Island receivership law notwithstanding). (See Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. 10-11, ECF No. 23-1.)

The Court finds this argument unpersuasive for two reasons. First, PIIC has no authority to alter the relationship between the Receiver and the Superior Court by negotiating a contract amendment with ProCAP's insurance broker. As was discussed in the previous section, a Rhode Island receiver has the duty to marshal the assets of the receivership entity and performs this duty on behalf of the Superior Court. This duty cannot be vitiated by an insurance contract between the insurance carrier and the entity which is the subject of the receivership. Absent consent from the Superior Court, any such contract is ultra

13

vires and unenforceable.[7] To hold otherwise would allow private parties to contract away a receiver's legal authority (and, by extension, the authority of the Superior Court) to collect the receivership entity's assets. This result would be clearly unconscionable.

Moreover, even if this Court were to find the amendment defining the Receiver as "perform[ing] services for" ProCAP enforceable, which it does not, the Receiver's claim would still not fall within the insured-versus-insured exclusion. The Policy uses different language in its insured-versus-insured exclusion (defining what claims will not be covered) and its amendment (defining the Receiver's role under the contract). The exclusion applies to claims "brought . . . on behalf of the Organization." (Compl. 45-46, ECF No. 1.) By contrast, the amendment defines the Receiver's role as an "Independent Contractor . . . who is

---

[7] "[T]he doctrine of ultra vires rests upon the principle that on grounds of public policy the courts will not enforce an illegal or an ultra vires contract . . . ." Barron v. McKinnon, 196 F. 933, 938 (1st Cir. 1912); see also Citizens' Cent. Nat. Bank of N.Y. v. Appleton, 216 U.S. 196, 205 (1910). This doctrine has been adopted by the Rhode Island Supreme Court. See, e.g., City of Warwick v. Boeng Corp., 472 A.2d 1214, 1218 (R.I. 1984) (discussing the "general rule that a contract or agreement against public policy is illegal and void") (citing Weil v. Neary, 278 U.S. 160 (1929)). In Rhode Island, a "contract or agreement is generally against public policy if it is injurious to the interests of the public, interferes with the public welfare or safety, is unconscionable, or tends to injustice or oppression." Id. (citing Calamari & Perillo, The Law of Contracts § 22-1 at 780 (2d ed. 1977)).

contracted to perform services for the Organization. . . ." (Compl. 11, ECF No. 1.) In addition to this difference in language, the Policy is devoid of any cross-reference between the insured-versus-insured exclusion and the later amendment defining the role of the Receiver. The insured-versus-insured exclusion does not reference claims brought by an "Independent Contractor," which is how the amendment defines the Receiver. Similarly, the amendment makes no reference to the insured-versus-insured exclusion.

As a general rule, "where the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." Antonin Scalia & Bryan A. Garner, Reading Law 170 (2012). In this case, after reviewing the contract in its entirety, the Court sees no reason to set aside that presumption and instead presume that when PIIC drafted the phrase "perform services for the Organization" in an amendment, what PIIC really meant was to define the Receiver as acting "on behalf of the Organization" for the purposes of the insured-versus-insured exclusion in the original Policy. This conclusion is fortified by the fact that there is no cross-reference between the insured-versus-insured exclusion and the later amendment defining the Receiver. Therefore, the Court finds that the phrase "perform services

for" is unambiguously not encompassed by, or synonymous with, the phrase "on behalf of" as those terms are used in the Policy.

D. Exception to the Insured-Versus-Insured Exclusion

The Policy purchased by ProCAP had a built-in addendum entitled "Pro-Pak Elite Enhancement."[8] Within that addendum was, among other things, an exception to the insured-versus-insured exclusion. That exception states that the insured-versus-insured exclusion "will not apply to any claim brought as a derivative action, or similar action, on behalf of the Organization, provided the claim is brought without the assistance of any current or former Individual Insured." (Compl. 60, ECF No. 1.) The parties disagree as to whether the Receiver's claim falls under this exception. Because the Court has determined that the insured-versus-insured exclusion is inapplicable to the Receiver's claim, there is no need to determine whether the Receiver's claim falls under an exception to that exclusion.

IV.  Conclusion

For the reasons described above, Plaintiff's Motion for Summary Judgment (ECF No. 20) is DENIED, and Defendants' Cross-Motion for Summary Judgment (ECF No. 23) is GRANTED. Judgment will be entered in favor of Defendants.

---

[8] A complete copy of the "Pro-Pak Elite Enhancement" is included with the Complaint. (See Compl. 58, ECF No. 1.)

16

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: January 24, 2017